The Third Circuit convenes this morning to hear two matters as a non-bonk court. The first of which is Maureen Riccio v. SentryCredit. Good morning, Your Honor. If it pleases the Court, I'm Joseph Jones from Jones-Wilcox Posse on behalf of the appellant Maureen Riccio. I realize sometimes I speak really quickly, so just slow me down in case I'm going too fast. I also realize that I have five minutes of uninterrupted time. However, I have no problem being interrupted ahead of time if need be. Well, we'll adhere to the five-minute rule, unless you make a specific invitation along the way. This Court has given us two questions to answer and to address today. The first one is, should Graziano and Caprio be overturned or overruled? And if it is to be overruled, should that new ruling be applied retroactively or prospectively? But I hope to the Court that before we can even get to those questions, we need to deal with the important underlying issue, and that is the letter itself in the Riccio file. We only get here if that letter is, in fact, misleading under the current standard, and the current standard is the Graziano standard, and whether or not the least sophisticated consumer, upon reading that letter, is confused or uncertain as to the rights of what they must do to actually dispute the debt. I think given that, we get to these two questions, and I'll address them in order. The first question is, should Caprio and Graziano be overturned? The answer to that question is no, and the reason the answer is no is that the standard is, is there a question or is there a question of exceptional importance that exists today where the rationale of past decisions no longer apply? And I don't believe that that's the case, because in this case there's no matter of exceptional importance that can't withstand the scrutiny of Graziano and Caprio. Graziano was very, very well reasoned back in 1991, 29 years ago, and has been in place for 29 years. And what the Third Circuit has held was that a dispute of a debt in the debt collection letter, after reading it, if the consumer wants to dispute the debt, they need to dispute that in writing. And the reasoning is very solid, and the reason is that we need to create a record that the debt is, in fact, disputed, and that the consumer did, in fact, dispute the debt. Nothing has changed since 1991 on this issue. There's no new technology that makes it easier or harder. A dispute in writing could be a letter, it could be an e-mail, it could be a text, but nothing really has changed. And that reasoning has, that reasoning is sound today. And the main reason for the reasoning is that they wanted to avoid potential conflicts, conflicts of whether or not the debt was actually disputed, which could happen on a telephone call. If you call on a telephone, the question is did they actually make the phone call, set on the call, what was the dispute. And unless this panel is ready to create the magic words that a consumer must say in order to dispute the debt, it's going to open up a wide range of cases down below that the district courts, and they're going to make their way up here again, are going to have to decide what are the words that constitute a dispute. Nowhere in the FDCPA, if you read the statute, and I deal with the statute on a daily basis, there's nowhere in that statute does it define what a dispute is. It doesn't tell you what words you have to use to dispute it. That's why they require a writing. A writing gives a permanent lasting record that the debt is in fact disputed and that the consumer did in fact dispute the debt. Outside of that, it's going to be a very subjective standard. For example, Judge Schwartz might dispute the debt one way. Judge McKay may dispute the debt a different way. I might dispute the debt a different way. I may call and think that I'm disputing the debt, but the person on the other end of the telephone may not think that I'm disputing the debt. If we change it from a writing standard to a calling standard, we're basically inserting a certain amount of subjectivity, subjectiveness into a statute that is relatively an objective statute. The statute as it is now is an objective standard of the least sophisticated consumer. Who's going to monitor these telephone calls? Are the consumer actually made a phone call to dispute the debt? How are they going to do that? They're going to have to go to AT&T, Verizon or someone, get their phone bill and say, okay, look, I called this phone number on this day and I spoke to that person for 32 seconds. Now it opens up the door, but what did they say for those 32 seconds? Did they call to get the address? Would they send a payment? Did they call to work on a payment plan or did they call to dispute? Did they use the magic words, whatever those magic words are that this panel would have to create to actually dispute the debt? It opens up a whole range of problems that the Graziano court dealt with and decided that they needed to be in writing in order to avoid it. This circuit has had no less than two opportunities to address Graziano since Graziano. Graziano goes back to 1991. The Caprio case in 2013 dealt with the same issue and the court stood by Graziano and said, no, a dispute has to be in writing in order for it to be effective. They dealt with it again in 2017 in the Laniano case and they stood again by Graziano saying, no, the dispute to be effective must be done in writing. Nothing has changed since 1991. There's no reason to change it now. It works as it is. The fact that opposing counsel and debt collectors- At least three points during your presentation, by my count, you invoked the term magic words. With that in mind, whether that was intended as a pejorative or otherwise, let's put aside anything mystical. Let's look at the text of the statute that we have before us. Do you have any textual basis, not magical basis, for saying that 1692G forbids oral disputes or does your whole argument turn on this court concluding that permitting oral disputes would be absurd? I think it falls in two areas. One is that I think that the statute, as it's written, the meaning of the statute and reading the G section of the statute altogether, it's clear to me that you have to write in order to dispute the debt. And I think this- What does A3 say? Excuse me? What does A3 say? A3 says that unless the consumer disputes a debt within 30 days of receiving the notice, the debt collector will assume the debt is valid. But I don't think you can read that, Your Honor, in just a vacuum. I think you have to read the two other paragraphs that come after that. The statute doesn't- It doesn't say in writing. So if A3 doesn't say in writing, that sounds like it could be oral or in writing, right? But there's a writing requirement throughout the rest of the G section. What did the Supreme Court say in Rusello about that? I'm sorry, I didn't hear you, Your Honor. What did the Supreme Court say in Rusello about that point? Didn't the court address that when it said where Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. You're correct, okay? I mean, you're correct. But this court has looked at that, and he looked at that in Graziano, and he looked at- But we're here to see whether we were correct in looking at it, right? Well, I don't know if the term- I don't know if we're here to correct it or we're here to reanalyze it to see whether or not the results that are coming out of it is something that the court wants to prove. But how about the instruction from the Supreme Court that Judge Hardiman just read? Wouldn't that cut against your argument? There's no mention of writing in Section 3. There's no mention of calling either. This isn't a writing or a calling standard. You keep describing it as a twist. The point is, if there's an omission of a writing in A3, why do we read into it, particularly given the other circuit precedent? I think the reasoning that the court used in Graziano is solid reasoning to answer that question, that it creates a permanent record. It's been rebutted, right? It's been addressed. You said multiple times in your presentation nothing has changed. Well, something has changed. Three other circuit courts have looked at it and explicitly said, more politely than this, the Third Circuit just blew it. They just read something in that isn't there and we shouldn't do that. So isn't that a significant change? If thoughtful courts across the country look at this and say that reasoning doesn't hold up, isn't that a change that we should be paying attention to? No, I don't necessarily think that this panel has to make the decision based upon what other circuits do. No, but you've said nothing's changed. Isn't that a significant change, something we should be aware of? Nothing's changed in this circuit and this circuit doesn't have to base its opinion on other circuits. I like to think our circuit is better than the other circuits. We got it right and the other circuits got it wrong. You can't just assert that. You've got to now address the reasoning that the other circuits gave. That's the thing that's changed. Three other circuits have come forward and they didn't just say you're wrong. They gave the textual argument that's being put to you. So what is the rationale that in the face of the text of the statute and those other circuits saying, hey, we've got to pay attention to the fact that writing is in the other subsections and not in that subsection, that's something that has to be accounted for. What's the logical answer or response that overcomes that? Well, are we saying that the court didn't look at that in Caprio? Are we saying the fact that Caprio was just a panel following what Graziano had done? There's no analysis. The only argument we can make with respect to Caprio is why didn't we invoke that case then? But things move on. Why haven't a couple of things changed? One being that the Supreme Court has, over the intervening years, has taken a far more textual approach and instructed us to do the same to the statute. And we see that reflected, as my colleagues noted, in our sister circuits cases. But in addition, our reasoning in Graziano, the second basis for it was we looked at the structure and said it otherwise creates an incoherent system. And that has been directly addressed and explained in a very rational way by our sister circuits, where it's a lesser burden on the debt collector than it makes sense for it to just be oral. It's going to be a greater burden than have it in writing. So why aren't both of those prongs of our reasoning in Graziano undermined through intervening developments? Well, I don't think it creates a lesser burden on the debt collector, if I heard you correctly. I think it creates a lot of confusion, and it creates an incoherent system within the statute as written, which is what our prior decision characterized. I take it, in referring back to Judge Krause's question, a somewhat famous quotation that has been reiterated numerous times is that we are all textualists now. I take it you exclude yourself from that group. That was a serious question. I wasn't trying to be glib. I hear that argument. I understand that argument. I don't necessarily agree with that argument because I think the reasoning behind Graziano was strong then, and I think it's strong now. I think it's going to lead to a lot of chaos down in the district. But if you look at the purpose of the FDCPA, it's supposed to help the consumer. Correct. By reading it in the way that's being proposed by plain language of the text, it allows for many options to the debtor to contact the debt collector or creditor. So isn't this actually a more consumer-friendly reading? No. So it's not only consistent with the text, but also the purpose. I don't think it is, Your Honor, because I think it creates a lot of problems for the How is the consumer going to prove that they disputed the debt? The way it works now is very clear. You send in a letter saying that you disputed the debt or you send in a text or an email saying you disputed the debt. But in your scenario, Your Honor, how is a consumer going to prove that they did in fact dispute the debt? Are we going to have to record telephone calls? The least sophisticated consumer, you say, would rather construct a letter to a company who says they're deadbeat and take on this corporation that's invisible to them? That's what the least sophisticated consumer would rather do than pick up the phone and say, I don't know any money or whatever the exact exchange would be? I didn't say that the least sophisticated consumer would prefer to do that. Answering the judge's question, she asked whether or not it's more consumer-friendly. And I don't believe that it is. I think it creates more chaos. Your position is that if a debt collector puts the exact words of A3 into a debt collection letter, that that violates the act because it doesn't include the in writing. No, that's not my argument at all. It never has been. If there's a writing requirement, then how would putting the language of A3, which does not mention writing, not violate the act? Because when I read the G section of the FDCPA, the validation section, you read it in its entirety. In my mind, it's clear that you have to write. Where the debt collectors run into trouble, Your Honor, is that they put all these other words and symbols of language and all these other little techniques in the letter that overshadows that. But those same letters are upheld by, say, the Second Circuit. Let's say that a letter is sent to a debtor who used to live in Manhattan. The debtor now lives in Jersey City. Mail forwarding forwards it on to Jersey City. Suddenly, the letter that was fine in the Second Circuit, you're going to sue them and hold them liable for that very same letter. That sounds like chaos and incoherence to me. I don't think that's what happened, Your Honor. I don't think that's necessarily the scenario. Let's think about it for a second. All the debt collectors, or most of the debt collectors, deal in multiple states. And a lot of these states have state-specific disclosures that have to be. If you pick up the Riccio letter and you turn it over on the back, it lists a whole lot of state disclosures. For example, it includes the New York disclosure. The New York required disclosure is in that letter. If it's reversed in your scenario with a New Jersey client that's got that letter, is that a violation? There's also state-specific disclosures that are made in almost every letter for California, Illinois, Massachusetts, Colorado. Why can't the debt collector simply include the New Jersey or the New York, the New Jersey, Pennsylvania, Delaware disclosure requirement? Why can't they simply tell the consumer that in the Third Circuit, you have to dispute it in writing? They tell them in New York what they have to do on certain issues. They've got to do this for all 50 states on every letter? If you pick up any one of these collection letters of the four or five cases that are consolidated here and you turn them over, the disclosures are on the back of there. And it says, and it even tells you, see reverse side for important disclosure information. And when you turn it over, what does it say? If you're a New York resident and this happens, da-da-da-da-da. If you're in Massachusetts and this happens, da-da-da-da-da. In California, the Rosenthal Act controls and they spell it all out for you. And it's in the letter. All they have to do is put it in the letter. But for some reason, the debt collectors choose not to. Complying with the requirement in the Third Circuit isn't hard. It's not difficult for the debt collector. All they have to do is just tell the consumer, put it in the letter. You'd have to acknowledge it's harder, wouldn't you? Don't you have to acknowledge that it's more time, trouble and difficulty for a consumer to create a letter and send it in and figure out where to send it than it is to pick up the phone and make a phone call? Is your argument really on the idea that it's easier for the consumer to dispute something in writing? No. I'm not saying it's easier. I'm saying that in the Third Circuit, that's the whole. Indeed it is, which is what we're here to discuss. But shifting gears for a minute. A letter was sent to ask counsel to tell us what they thought about whether, if we were to change the law, that would have either a prospective effect or would have retrospective effect, too. Can you talk about that for a moment? Sure. I think if the panel was to decide and institute a new rule here in the Third Circuit, that that new ruling should be on a prospective basis, not a retroactive basis. Isn't that contrary to how things usually work? Yes, it is, Your Honor. It is. However, there are exceptions to that. There's exceptions to a lot of things. One of the exceptions to it, and defense counsel points out in their brief as well, is that prospective overruling on reliance grounds is impermissible unless the law has been so well settled before the overruling that it was unquestionably prudent for the community and the litigants to rely upon those previous rulings. Well, let's look at it. You go back to 1991, Graziano. You go to 2013, you have Caprio. You go to 2017, you have Laniano. It is very reasonable for the litigants on both sides, plaintiffs and defendants, to have relied on this statute and the reading of it in this Third Circuit for the last 29 years. I mean, wouldn't that turn the general rule on its head? If the answer to the general rule were, well, this is a prior precedent and it's been that way, any time precedent changes, by definition it's a change, right? So it can't be the case that the general rule is we apply our precedent retrospectively to cases that are still open. If your answer to that is, no, no, any change is a change that means it can only be prospective. I mean, I don't understand. That seems to invert the rule. I'm not saying any change. I'm saying if there's just a full reliance on the previous decisions, okay, then it should be applied prospectively. Yeah, but that's always going to be reliance. Well, your letter brief was entirely about New Jersey law, but this is a federal statute. Aren't appellees right that we have to apply the standard Harper, Virginia approach of full retroactivity in civil cases? We have to look at, I think we have to look at whether or not the reliance was justified. I think we also have to look at the effect of it, okay, and is it fair to the people who already Isn't it right that this is a matter of federal law, not New Jersey law, what's retroactive? That's correct. Okay, that's correct. It's federal law. The administration of justice underneath the new rule by making it retroactive is extremely unfair, not just to the plaintiffs, but also to defendants. Okay, there's a lot of debt collectors out there that comply. We see letters all the time in our firm where the debt collector complies, and they tell the consumer that they have to dispute the debt in writing. Some people do that. These folks don't, but a lot of debt collectors do that. Are all those debt collectors not going to be in violation? What is your authority for it being prospective? Because Suez, the Seventh Circuit case that you rely on, ultimately comes out that in overturning the interpretation of the FDCPA, that it should not be prospective, even acknowledging that there may be some room based on equities left in Supreme Court cases for in some cases doing that. Well, Suez also concluded that prospective ruling on reliance is impermissible unless the law has been so well settled before the overruling that it was unquestionably prudent for the community to rely upon the previous standards. Right, but here we have a deepening circuit split over the years in question. So it's hard to say that there was any consensus or uncertainty that litigants could rely on. Well, if you're a litigant on either side of an FDCPA case, if you're the debt collector or if you're the plaintiff, you're going to look at the current case law that's out there and you're going to rely upon Caprio, you're going to rely upon Graziano. I mean, it's justified. There's debt collectors out there that comply. Now, all of a sudden, those debt collectors are also going to be subject to lawsuits. If what you're saying is accurate, that means I can go back to my office and every debt collection letter that complies underneath Graziano would be a problem and they face a potential lawsuit. When would something be retroactive then? Excuse me? When would something be retroactive? If you're making the reliance argument and any time there's been law that's been relied on, you wouldn't apply retroactivity. Well, then when would you apply it? Okay, and I wouldn't necessarily classify what I'm saying in the same manner that you're saying it because I'm looking at Suez and it's talking about reliance, but it's talking about where it was unquestionably prudent for them to rely upon it. Sometimes you can rely upon a statute and it may not be on as much solid ground, but where there's a strong track record of case law on a particular point. But your reliance is on case law here, right? Yes. You're saying there's a long line of case law. So I'm asking you, if retroactivity doesn't apply in that instance, when would you say that retroactivity would apply? If there was a change or a new rule came into effect that the plaintiffs or the litigants on either side were not heavily relying upon it, that it was so unquestionable, that they didn't necessarily need to rely on that statute the way it was in order to bring the action forward. It always has to be a question of first impression. No, I mean, there could be exceptions to that. I mean, a case of first impression is it would be it would be a good example. But I think there could probably be thought about it. We could probably come up with some exceptions to that. I think let me ask you this question, because if I understand what what the thrust of your argument for this being perspective is, is you're actually taking up the mantle of the currently Graziano compliant debt collectors. So you're saying that the real problem is them. They've complied. They've said it needs to be in writing. And now they would be looking at exposure, possibly for an unfair debt collection practice because of their compliance. And if the rule flips now, they have exposure. Let me ask you. So that seems to be your number one argument, as I see it, for perspective. But let me ask not just that, but the plaintiffs as well. OK. But you're taking up there. But let me ask you, in light of that concern, doesn't the FTCPA in another section already account for that? And I'm talking about Section 1692 K C. And it says, quote, a debt collector may not be held liable in an action brought under this subchapter. If the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Quote. So isn't that set of people already in the safe harbor that would constitute a bona fide error relying on a prior precedent? And then if so, why don't we just revert to the normal rule of retroactivity? By following that logic, though, wouldn't that mean that is prospective to them and retroactive to the consumers? Well, I mean, that's your point. But the flip side is, is this subsection contemplates that there would be an instance where a bona fide reliance on law would be an exception to a debt collector's action and an action against a debt collector. And with that exception, it could be prospective to everyone else. And then those compliant debt collectors would be handed a statutory defense, probably pretty strong, given that they were relying on circuit precedent at the time. And then we could comport with the normal law, which would be retrospective, recognizing that the statute seems to contemplate an instance where debt collectors would otherwise follow law. And they would have to prove that they have a system in place. And their system in place could easily be that we're following Graziano when Graziano was the law of the circuit. And therefore, we could do retroactive. And then for those that would be in that one-year statute of limitations window, they could show up with intent. And then there's no prospective concerns at all that I see. Are we implying that the bona fide error defense is a complete defense to somebody who didn't comply with somebody who would be complying with the scenario? That's really the question for you, right? Because I think the answer is wouldn't a bona fide error be reliance on circuit precedent? And if so, then I don't think there's a reason to deviate from retroactivity. And I'm not sure why we think that the debt collectors are at risk. You know, they're represented here, and I'm sure they'll be speaking for themselves. But what is the circumstance under which they would be at risk? Because we're talking about whether or not the consumer has to put something in writing or can make a phone call. The fact that the debt collector says, in good faith and based on our own analysis in Graziano, you should contact us in writing. You have to posit a circumstance where somebody made a phone call instead of writing and then says, wait a second, you misled me. What's the likelihood of that coming up at all? I think the likelihood is probably high because there are a lot of collection letters that are out there with the consumers that comply, that currently comply, that tell the consumer that they have to write. And frankly, as a plaintiff's attorney, we're always baffled on why is it so difficult to just put that in your letter. You know, just tell the consumer what the current statute is. It makes life a lot easier for everybody, and we avoid a whole lot of lawsuits. So you've got to assume that there are a lot of consumers that would rather make a phone call. Yeah, I would think there's consumers that want to make a call. I mean, when they ask us as counsel what we should do, it's always in writing. For the same reason that the court found that Rosiano should be in writing because it creates a permanent record of, in fact, that it was disputed. Because if you just think about it for a moment, a telephone call is a problem. I am thinking about it. That's why I'm asking the question. The question is, to reach the concern you've got, you have to assume that there's lots of consumers that would rather make phone calls. You may answer the question. Do I think there's a lot of consumers that would rather make telephone calls? Yeah. I think a lot of consumers, if they were told that they could call, would pick up the phone and call. I think it creates a whole lot of problems because how do we prove the calls were made? How do we prove the content of the telephone call? All right. Thank you, Mr. Jenkins. How much time did you reserve for rebuttal? I reserved four minutes. All right. We'll have you back on rebuttal. Mr. Cutler. Good morning, Chief Judge Smith, and may it please the court. Jacob Cohn from Gordon-Reese, Scully, and Manzacani. For the Appellee Sentry Credit with me is my partner, Peter Sykos, who was trial counsel. The FDCPA is a consumer protection statute. It has the purpose of eliminating unfair and abusive debt collection practices, while also ensuring that lawful debt collectors aren't competitively disadvantaged by unscrupulous debt collectors. Now, 1692A prescribes the contents of what is referred to as the validation notice, and it has five parts. A1 is the amount. A2 is the name of the creditor. A3, you must state that unless within 30 days after receipt of the notice, the consumer disputes the validity of the debt or any portion thereof, the debts will be assumed to be valid by the debt collector. A4 says if the dispute is in writing, the debt collector needs to obtain and provide verification of the debt or the judgment and provide it to the consumer. A5, if requested in writing, the debt collector will obtain and provide the name of the original creditor, if different. 1692GB then says if a consumer gives written notice or makes a written request under A4 or A5, debt collection activities must cease until there is compliance with providing the information. Now, Graziano, as we've been discussing, rewrote A3 to add the words in writing to A3, where they are nowhere to be found in the text. The panel gave two reasons. First, it said that allowing a debtor's nonwritten dispute would leave the debt collector without any statutory ground for assuming that the debt was valid, but would not be required to obtain verification of the debt or to advise the debtor of the identity of the original creditor and could continue debt collection activities. The panel said this is an incoherent system without much more analysis. Second, Graziano panel said as a policy matter, it's a good idea to prefer that a dispute of a debt collection be in writing. A writing creates a lasting record of the fact that the debt has been disputed and thus avoids a source of potential conflicts. Graziano was wrongly decided, respectfully. It substituted its policy judgments for those of Congress, and that was unwarranted. Its countertextual interpretation is contrary to the FDCPA's plain language and runs contrary to established principles of statutory interpretation, one of which was already discussed here, Russello, which is the presumption that Congress acted intentionally when it uses language in one subsection of a statute and omits it from another. More fundamentally, a court can only insert language into a statute if the result of the statute's plain meaning is absurd, thus laming. Now, an oral dispute gives the debtor specific rights under the FDCPA. Under 1692H, it prohibits a collector collecting multiple debts from applying the payments to disputed debts. Under 1692E8, a debt collector must advise when it's reporting credit information that the debt is disputed. There are other benefits outside the FDCPA's expressed terms that show that enforcing the statute as written is not absurd. Many debtors have no need to seek validation or seek to stop any collection activity. They know what they owe and to whom and seek a compromise of a dispute. In these instances, validation would serve no purpose and stopping debt collection activity would hinder the ability to reach a compromise and resolve a debt. There are other situations where it makes no sense at all if you have a victim of identity theft. Getting validation of the debt doesn't change anything. Somebody got a fraudulent debt in that person's name. There's no need for it. The insertion of in writing into A3 itself introduces incoherency because A4 contains the conditional word if. So if the dispute is in writing, which becomes superfluous, to put an if in A4. And to the extent that resort to legislative history is appropriate at all, you go back to the draft of the FDCPA going all the way back to 1976 when Senator Biden introduced a predecessor bill in a prior Congress, they all have a section three that does not require a writing and a section four that does. Mr. Cohen, I know that there is an irony here that has not escaped any member of this court or probably anyone else who knows anything about this case. That is that Riccio, as a debtor, is trying to constrict the potential ways to dispute a debt. And Sentry here, as a collector, is trying to expand them. Putting aside that little irony of this particular case, we are, as you know, as everyone knows, as has been argued here by your colleague and adversary on the other side, sitting in bond, reconsidering, taking a look at a precedent of this court. But if I recall, your supplemental brief didn't really address the stare decisis issue, or at least not very much. I'm curious about your position with respect to that, since much has been made of it by Mr. Jones. As you know, we do not overturn circuit precedent with great frequency. And one might argue that that's especially true here with Graziano, because some might argue that in those several decades, number of decades that it has been in effect, it hasn't proven to be unworkable. So with that in mind, why should we, sitting in bond, overrule this particular precedent? I assumed that because we are sitting here, we're over the threshold that the court should think seriously about this. Oh, yes, yes, yes, yes. Over the threshold. I mean, obviously we've been bonked this, we've convened, but that carries with it the requisite that we resolve a question about whether or not to overrule this precedent after the requisite consideration of all the relevant factors. So what are those predominant factors that ought to guide us as we go about overturning a decision made by three of our colleagues 30 years ago? Well, I think that the growing judicial rejection of this precedent is significant. I think that the fact that all three circuits that have looked at it have rejected it. Further, there are district courts and about five other circuits that have rejected the application of Graziano. But I think the point being made is the stare decisis applies with greater force to decisions on issues of statutory construction as opposed to constitutional construction. So why not follow that general rule? Because there is a significant need for national uniformity on a federal regulatory scheme. And the fact that you have cases springing up all around the districts of your circuit that now not only are attacking the telephone issue, but are taking issue with what is a standard validation notice. And I brought it up here. This tracks the statutory language. And my colleague here was in error when he said that there is not an attack on the statutory language. We discussed this in the panel that it was not properly preserved in this case, but they tried to inject it into January 24th, 2019, 28 J letter. But the argument against you is it doesn't. This particular notice doesn't track the interpretation of that statutory language for Graziano. That's true. That's true. They are saying that you would have to add the invisible words from the Graziano interpretation of the statute into the recitation of the statute here. And that gives rise to a catch 22 situation where a debt collector has to tailor it within this circuit and runs into the conundrum that Judge Hardiman raised at the panel argument that somebody in New York could move to New Jersey, have the mail forwarded to New Jersey where it doesn't have the in writing requirement and get there and get sued in the Third Circuit. Somebody could live in Newark and move to Long Island and have the in writing and then sue in the Second Circuit because that's not appropriate in the Second Circuit. It is not appropriate. It's a counter textual interpretation that is on a level, as I suggested at the beginning of the panel discussion, of a friend bill. This is one that the circuit got wrong. It's a national regulatory scheme. It is unworkable. It is counter to the interests of consumers. What about the evidentiary concern that your colleague has raised? Is it the case that these phone calls are not recorded? So that consumers would be left trying to prove what was actually said? And is there some difference we also heard about? And I'm sure we'll hear some more on rebuttal about the concern with magic words. Is there some reason that they would be different in what was said over the phone versus what was put in writing as to what constitutes a dispute? Well, I think in this day and age, it is a reality that most telephone conversations with service centers or debt collectors are recorded. I think that that is far more likely to be true. I don't think ultimately it's relevant to whether or not the statute says what it says. But I don't think there are magic words. I think, again, it becomes an issue. If somebody is going to sue and say, I disputed it, it becomes an evidentiary issue. But the words would be equally magic whether in writing or expressed orally. Right. I mean, the policy choice, Judge McKee, that Judge Pollack wrote for the panel in Graziano is just that. It's a policy reason. It's not something that the judicial branch should be using in interpreting a statute that is not facially absurd. So you're saying there's no. But on a slightly different point, you're saying there's no reliance interests here. Your adversary pointed out the fact that there are debt collection entities that complied with Graziano in their letters. So you're saying there's no reliance interests. And if your answer is no, there's no reliance interests. And how would you respond to my friend from Pittsburgh's question about the good faith defense? Well, I had a note to respond to Judge Phipps. Well, first, if you could answer that. Are you saying there's no reliance interests here? And if so, how do you reconcile that with the good faith defense? On the plaintiff's side, Judge Schwartz, other than the cottage industry that has sprung up here, there is no reliance interest. There is, in fact, a acknowledgement of the greater rights of the consumer to initiate a oral dispute of the debt and unlock those limited protections that that oral dispute provides under the FDCPA. OK, so if we could turn I'd like to guess this is a good point to turn to the retroactivity, because I looked at it pretty extensively. And once I got the homework assignments last week, and I don't think that there's any serious question, but that Harper and Beam require retroactive application of a decision overruling Graziano. Then the question becomes what happens to the debt collectors who I don't represent here today, who changed their tailored their language within the Third Circuit. And to that. You had so by the way, Suez in the Seventh Circuit, the en banc overruling of Newsome pretty clearly lays out why there is no basis not to give retroactive application. As to the bona fide error defense, the immediate problem that just looking at it fastly runs into Judge Phipps is the German cases from the Supreme Court where the Supreme Court that held that legal error is not a basis for application of the statutory defense, which leads to another several cases of interest here. The Aliva cases from the Seventh Circuit is the follow up to Suez where debt collectors were then sued and said, hey, wait a minute, you just retroactively made this illegal. You can't do this. And the panel said, you're right. The Seventh Circuit took it up en banc and seven to four said, no, we can't. Because of German, we can't do this. And there's a four judge dissent there. And in the middle of all of that, there's a Daubert case from this circuit. That Judge Hardiman was on the panel with Judges Roth and Fisher in 2017, which was a case that touched upon this, noted that that panel had ruled. This was between when the panel ruled in Aliva and the en banc court ruled in Aliva. And so we're not deciding that today. That's not before us. So I think that the answer is if Graziano is overruled and is properly given full retrospective effect, then a debt collector who was tailoring it and got sued for it could come and argue this. It's an open question. I'm trying to resolve a circuit split here and not create another one. But if you were to agree in that future situation with the four dissenters in the Seventh Circuit, we would have a new circuit split. I don't know why you give up on that on subsection case so easily, because it doesn't just say it has to be a bona fide error, but it says that the violation has to be intentional. And why wouldn't it be a perfect argument to say this wasn't intentional because we were following Graziano? I'm perfectly sanguine with that result, Your Honor. But again, it's it's it's an issue that is not too concerned about other people. I looked at it in some depth and some detail, and I think that that's that's this. That's where the judicial landscape presently stands. Can we just briefly talk about the logistics? I understand your textual argument, but I am curious about Mr. Jones's argument that this is going to prejudice the least consumer, excuse me, the least sophisticated debtor. Two hypotheticals. Scrupulous debt collector hypothetical. They send the notice to John Smith. John Smith says, you know, wrong one. I'm John G. Smith, not John K. Smith. Calls the scrupulous debt collector. Hey, you got the wrong guy. Scrupulous debt collector says, thank you very much. We are in error. Don't worry about it. What happens in the same scenario when it's the unscrupulous debt collector and the wrong? John Smith calls and says, hey, you got the wrong guy and he gets to run around. What happens to him? What do you mean the run around? The point is, once you're on notice as the debt collector, you've been dispossessed of the ability to assume that the debt is, in fact, bona fide. OK, you cannot. Well, but I'm positing the unscrupulous debt collector. So when you get into fact challenges, it's they lie. Right. John Smith, as I called, I told them, you know, they got the wrong guy and they ignored me and it was worse. They told me everything would be fine and everything wasn't fine. They kept hammering my credit. Then what happened? Then you have an evidentiary issue and you have all the other things that a debt collector can't do. And you have the protections that exist elsewhere in the statute and elsewhere in state law. And, you know, the issue that you're really getting to here is sort of the isn't it better to have it in writing, which is one thing, not really what happens when you are given this information that the statute says you can continue lawful debt collection activities. The guy could then put it in writing. Mr. Smith could write and say, I did. I dispute this and at least put a halt on it. But, you know, it is an ongoing problem of a lot of people in this country. Yes, especially if their name is Smith. Without passing upon scruples, I can assure you that a David B. Smith receives one hell of a lot of calls. Counsel, while we're on this plate, can I just ask a separate question? You mentioned the least sophisticated consumer statute, which we have used to interpret 1692 E, which discusses false, deceptive or misleading representations. Where does that least sophisticated consumer stat standard come from in the statute? It is not in the statute. It is a judicially created standard. That at some point it gets used. For it almost becomes a chancellor's foot measure sometimes. What what do you what do you want to be a violation? It is nowhere in the statute. And I would suggest not for today, but that the court keep in mind that at some point it's going to run up against the First Amendment and commercial speech. Any questions from members of the court? If there are no others. Mr. Cone, thank you very much. We have Mr. Jones. Also with that particular name, probably received some calls. We have a very similar problem, particularly when you're Joseph Jones. And you get all those telephone calls, which many of them are wrong, wrong telephone calls. Just one or two quick points relating to what opposing counsel had talked about a little bit. You know, making the assumption that most telephone calls are recorded isn't really accurate today. There's a lot of small time debt collectors out there that don't have recording devices. And are we going to really put every collection agency, every debt collector in a position that we have to that we have to record telephone calls in order to verify debts? It's a policy argument. That's where you began. You began with a policy argument as opposed to what is required under the statute. Otherwise, I really, unless there's other questions, I really just stand on what I spoke about a little bit earlier. You did refer a number of times to magic words. Is there some reason you think that if there's confusion about what constitutes a dispute, that there would be more confusion of that? Yes. In a call versus in writing? Yes, I do. Because I think I think when you sit down and you write and you say, I dispute the debt, can you send it in? I don't know that you're putting rabbit in the hat. The letter may not say I dispute the debt. You made a very clear question of what the letter would say. Yes. The letter may not say that. OK, the letter, the letter. The letter could say something to the effect that I don't owe the money because, you know, my sister paid or it's not my debt or I'm not the wrong. The wrong Mr. Jones or the wrong Mr. Smith. It could say that. OK, or it could say dispute the debt on the telephone. Yeah, I think it creates more of a problem because what you consider disputed that may not be what I consider disputed in the debt. So for example, it's true in writing. I think I think in writing, at least it creates a record that you did, in fact, dispute the debt with whatever word you use. OK, on the telephone, on the telephone. I think we're going to create a whole lot of cases down in the district court about, well, they call. But did they actually dispute the debt? And if you read a lot of the a lot of the briefs on this issue from from the debt collecting industry, is that they say, yeah, we tell them they can call. They can call for any reason. It's an invitation to call and talk about whatever they want to talk about. Well, we're talking about anything. What what part of that conversation is the dispute part if it's there at all? I don't understand. Why is that bad for consumers? If you go back to the district court and have a phalanx of possibilities as to how you could interpret dispute. Right. Keeping in mind that a three doesn't require a writing. Why doesn't that in order to the benefit of consumers? I think I understand the question. Are you asking me? Is it is it? I'll put it. I'll put it better than my question is. If you're worried about going back to the district court and the district court now has different scenarios, it's a call and no recording. It's a call with a recording. It's a call. And neither the consumer nor the debt collector remember exactly what was said. Those are all different scenarios that could in order to the benefit of the the debtor. Not this is not necessarily. Because what would it look like? Well, what if the scenario, though, is that they say, well, you call, but you didn't dispute the debt. But you're assuming that it's all going to in order to the detriment of the debtor. And it doesn't take into account the fact that the absence of. A writing requirement in a three means that all of these possibilities are within the contemplation of Congress. Congress didn't specifically put in the statute that that you could call the dispute to that. Mostly through the G section, it talks about writing. OK. And I think the reason why the Graziano court came down the way it did was that it was sound reasoning that it made a lot of sense. I just see a lot of I see a lot of open end litigation that's going to happen on the dispute side of it. OK, was it actually this way? It might be good for plaintiff's counsel. But as a as an assumption, I believe on that note about what's good for plaintiff's counsel. Thank you. And thank you to both sides for your spirited and helpful arguments. The involved court will take the matter under advisement. We promise no magical decision, but hopefully illegally correct. Well, we will recess and reconvene promptly at eleven o'clock. Thank you.